IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | 1:15-cr-0083-WSD |
| MICHAEL B. WALLER, | |
| Defendant. | |

**OPINION AND ORDER**

This matter is before the Court on Defendant Michael B. Waller's ("Defendant" or "Waller") Objections [56] to Magistrate Judge Justin S. Anand's Report and Recommendation [49] ("R&R"). The R&R considers Defendant's Motion to Suppress Evidence [9] ("Motion"), and recommends that it be denied. The R&R also recommends that Defendant's Motion to Suppress Statements [10] be denied as moot.[1]

---

[1] Defendant states that he filed his Motion to Suppress Statements "to protect his constitutional rights," although he acknowledges that it is not clear whether any statements were obtained from him. (Mot. to Suppress Stmts. at 1). Defendant did not perfect his motion and neither party introduced evidence of any statement obtained from Defendant. Defendant did not object to the Magistrate Judge's recommendation that his Motion to Suppress Statements be denied, and the Court finds no plain error in this recommendation. Defendant's Motion to Suppress Statements is denied.

I.     BACKGROUND

Defendant is charged with being a felon in possession of a firearm in violation of 18 U.S.C §§ 922(g), 924(a)(2) and 924(e).  The charges arise from an encounter with law enforcement on September 17, 2014.  On that day, Defendant was a passenger in a car with a female driver.  Another female was seated in the front passenger seat.  Defendant was in the rear seat, behind the driver.[2]

Atlanta Police Officer Sajdak and his partner, Officer Daniels, were patrolling the area around the Rolling Bends Apartments.  (Tr. [37, 39] at 3-4, 64-66).  This area has experienced a number of violent and other crimes, including murders, robberies, shootings, drug offenses and gang-related activity.  (Id. at 100-101).  Officers Sajdak and Daniels, and the police department generally, considered the Rolling Bends Apartments neighborhood a high crime area.  (Id. at 3-4).

While patrolling at 10:00 p.m. that night, Officers Sajdak and Daniels noticed a Dodge Charger in the neighborhood that did not have a light on its license plate holder.  (Id. at 5, 66).  The patrol car's blue emergency lights were turned on and the Charger pulled into a parking space in the apartment complex.  (Id. at 6, 67).  Officer Sajdak walked to the Charger and, through the front passenger side window,

---

[2]   Defendant does not object to the facts set out in the R&R and, finding no plain error, the Court adopts them.  The Court largely relies on the facts recited by Defendant in his Objections, which are consistent with the facts set out in the R&R.  (Objs. at 3, n. 3).

asked the driver to produce her driver's license.[3]  (Id. at 6-7).  She complied.  (Id. at 9).  Noticing there were two passengers in the car, he asked both of them—including Defendant—if they had identification.  (Id. at 8-9).  Defendant stated that he did, but when asked to produce it, he said he did not have the identification on him.  (Id. at 9).  Defendant then swung open his car door.  Officer Daniels told Defendant to stay inside the car.  (Id. at 10, 69).  Defendant complied.  (Id. at 68).  Officer Daniels testified that it is unusual for a passenger to try to get out of a car that is stopped. (Id.).  Officer Sajdak shined his flashlight toward Defendant, did not see anything suspicious, but moved to the car door next to which Defendant was seated, to make sure Officer Daniels was okay.  (Id. at 10).

Officer Daniels watched Defendant as he sat in the car.  He noticed beads of sweat collecting on Defendant's forehead, saw an artery in his neck begin to pulse, that he began breathing heavily and became very fidgety, was wide eyed, rubbing his leg and "just wouldn't stop moving."  (Id. at 70).  Defendant was ordered to keep his hands in his lap.

Only about ninety seconds into the stop, Officer Sajdak asked Defendant for his name and date of birth.  Defendant said his name was "Jeremy Waller" and he

---

[3]     Officer Sajdak approached the front passenger side because he believes an approach from that direction is unexpected by the driver, and thus is safer than approaching the driver side directly.  (Id. at 6-7).

gave a date of birth. (Id. at 10-11, 70-71). Officer Sajdak entered this information into the computer in his car. (Id. at 11-13, 71). He chose to enter Defendant's identifying information because Defendant had tried to leave the car and had to be "told several times to remain in the car." (Id. at 13). Officer Sajdak wanted to find out if there was an outstanding warrant against him. (Id.). The computer search on the name and birth date that Defendant gave was performed only about two minutes and thirty seconds after the stop began. (Govt. Ex. 1).

The computer search showed no entry under the name and birth date Defendant gave. (Tr. at 14). This negative search result did not, in Officer Sajdak's view, exclude the possibility that Defendant was not honest about his identifying information because people sometimes have aliases and there are other possible reasons a match was not made. (Id. at 14-15). The computer did find a "possible warrant under a different name," "Dwayne Thomas Waller." (Id. at 14). Officer Sajdak stated to another officer on the scene that the computer search did not disclose a warrant against "Jeremy Waller" but did report "a possible warrant under a different name." Officer Sajdak's training and experience was that a "not on file" search response required an officer to get further identifying information and conduct further searches. (Id. at 15-16). Officer Sajdak continued the search

4

process to try to verify the information he received, leading to the decision to ask Defendant to get out of the car.  (Id. at 16-17).

Officer Daniels, who was at the car door next to where Defendant was seated, opened the door and ordered Defendant out of the car, telling him to place his hands on the car roof.  (Id. at 17, 73).  Defendant stood up and fled.  (Id.). When Officer Sajdak saw this happen, he abandoned his search process and joined in the pursuit of Defendant.  (Id. at 17).  While chasing Defendant, Officer Daniels saw him remove a firearm from his pocket but did not see what happened to it.  (Id. at 76-77).  He warned the other officers of Defendant's gun.  (Id. at 17). Defendant ultimately was tackled.  (Id. at 17-18, 75-76, 137-138).

When Defendant was helped up after being subdued, officers found a gun in the grass where Defendant had landed.  (Id. at 77-78).  After his arrest, Defendant was placed in a police car.  Officer Sajdak continued to try to determine Defendant's identity.  (Id. at 21).  Defendant ultimately gave Officer Sajdak his true name and date of birth.  (Id. at 21-22).

Defendant acknowledges that the law allows an officer (i) to request passengers in a car during a traffic stop to identify themselves, (ii) to search the identifying information provided, and (iii) to order a passenger to remain in, or to exit, a car.  (Obj. at 14-15).  Defendant here argues that Officer Sajdak's "sharp

diversion of his attention from the driver's moving violation to Mr. Waller's identity lengthened the traffic stop beyond what is reasonable," and thus was unconstitutional.  (Id. at 15).  As a result, Defendant argues that the seizure of the firearm that Defendant dropped when he ran is required to be suppressed. Defendant specifically "objects to the Magistrate Judge's factual and legal conclusions that (i) 'Officer Sajdak's inquiry never progressed beyond the reasonable duration and "mission" of an ordinary traffic stop;' and (ii) 'the officers had developed specific suspicion as to Defendant and whether he might have been the subject of a possible warrant."  (Id. at 12) (quoting R&R at 9, 12).

## II.     LEGAL STANDARDS

### A.     Review of an R&R

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982), cert denied, 459 U.S. 1112 (1983).  A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  With respect to those findings and recommendations to which a party

has not asserted objections, the district judge must conduct a plain error review of the record.  United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

      B.      Reasonable Suspicion to Conduct an Investigatory Stop

A law enforcement official may conduct an investigatory stop if there is reasonable suspicion that the person has engaged or is about to engage in criminal activity.  United States v. Arivizu, 534 U.S. 266, 273 (2002); Terry v. Ohio, 392 U.S. 1, 21 (1968); United States v. Hunter, 291 F.3d 1302, 1305-06 (11th Cir. 2002) ("[A]n officer may conduct a brief, warrantless, investigatory stop of an individual when the officer has a reasonable, articulable suspicion that criminal activity is afoot, without violating the Fourth Amendment.") (citing Terry, 392 U.S. at 30).  This standard similarly governs investigative stops of vehicles. United States v. Sokolow, 490 U.S. 1, 7-8 (1989); United States v. Sharpe, 470 U.S. 675, 682 (1985); United States v. Harris, 526 F.3d 1334, 1337 (11th Cir. 2008) (citing Terry, 392 U.S. at 1).  Reasonable suspicion requires less proof than a finding of probable cause.  United States v. Tapia, 912 F.2d 1367, 1370 (11th Cir. 1990); United States v. Monzon-Gomez, 244 F. App'x 954, 959 (11th Cir. 2007) ("The Fourth Amendment plainly does not prohibit a law enforcement officer from pulling over a motorist for suspected speeding whenever the officer is acting solely on the basis of his visual observation.").  An officer

need only have sufficient cause to believe that a traffic law has been violated, regardless of the officer's subjective motivations.  United States v. Simmons, 172 F.3d 775, 778 (11th Cir. 1999).

Whether reasonable suspicion exists is determined by considering the totality of the circumstances and whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing.  Arvizu, 534 U.S. at 273.  Whether conduct is suspicious may take into account that the conduct observed occurred in a high crime area.  United States v. Gordon, 231 F.3d 750, 755 (11th Cir. 2000).  That is, the "reputation of an area for criminal activity may be considered when determining whether circumstances are 'sufficiently suspicious' to warrant further investigation."  Hunter, 291 F.3d at 1306 (citing Gordon, 231 F.3d at 755-56); see also Illinois v. Wardlow, 528 U.S. 119, 124 (2000) ("We have previously noted the fact that the stop occurred in a 'high crime area' among the relevant contextual considerations in a Terry analysis.") (citing Adams v. Williams, 407 U.S. 143, 144 (1972)).  In determining whether there was reasonable suspicion to detain, "[g]reat deference is given to the judgment of trained law enforcement officers 'on the scene.'"  United States v. Chanthasouxat, 342 F.3d 1271, 1276 (11th Cir. 2003); see also United States v. Griffin, 696 F.3d 1354, 1360 (11th Cir. 2012).

A traffic stop may be based on reasonable suspicion, and the manner in which the stop is conducted must be reasonable.  The Eleventh Circuit has set out the contours for a traffic stop based on reasonable suspicion:

> Under Terry, an officer's actions during a traffic stop must be "reasonably related in *scope* to the circumstances which justified the interference in the first place."

United States v. Purcell, 236 F. 3d 1274, 1277 (11th Cir. 2001) (citations omitted).  The Eleventh Circuit also stated: "Furthermore, the *duration* of the traffic stop must be limited to the time necessary to effectuate the purpose of the stop."  Id.  That is, a "[t]raffic stop may not last 'any longer than necessary to process the traffic violation' unless there is articulable suspicion of other illegal activity."  Id.  The duration of a stop also is evaluated from the perspective of the time needed to assess and address any risk to the officers conducting a stop.  United States v. Rice, 483 F. 3d 1079, 1084 (10th Cir. 2007).  This includes questions and directions to vehicle passengers, which are constitutionally allowed, because "passengers present a risk to officer safety equal to the risk presented by the driver," allowing an investigating officer to "ask for identification from passengers and run background checks on them as well."  (Id.).

### III.  ANALYSIS

In his Objections, Defendant does not challenge the stop, the request for identification, or the order for the car passengers to remain in the vehicle. Defendant argues that when Officer Sajdak "shifted his focus" to Defendant's identity, the duration of the stop for the license plate light became unreasonable, and thus unconstitutional. The Court thus focuses on the duration of the traffic stop and whether it was unreasonable.

Defendant offers a bright line test for when the "mission" shifted away from the license plate light violation for which the stop was made, to an inquiry into Defendant's identity. This deconstruction ignores what is constitutionally allowed during a traffic stop and it is based on misstated facts and a myopic, impractical interpretation of them. Finally, it ignores that an officer may prolong a traffic stop when the officer has suspicion of other illegal activity. See United States v. Boyce, 351 F.3d 1102, 1106-07 (11th Cir. 2003); United States v. Pruitt, 174 F.3d 1215, 1219 (11th Cir. 1999).

A.  Duration of the Stop

Defendant does not challenge Officer Sajdak's right to request, and confirm, Defendant's identity or the right to require the passengers to remain in the car. See Muehler v. Mena, 544 U.S. 93, 101 (2005); Rice, 483 F.3d at 1084. It is well

established that the original mission of a traffic stop includes ordinary computer and identity checks. See Rodriguez v. United States, — U.S. —, 135 S.Ct. 1609, 1615 (2015).  One purpose for allowing a stop to include identity inquiries is that officers are allowed during a stop to "attend to related safety concerns." Id.  When passengers are in a vehicle, safety concerns are present because "passengers present a risk to officer safety equal to the risk presented by the driver." Rice, 483 F.3d at 1084.  That is especially true when the stop occurs in a high crime area.  The facts here show that Officers Sajdak and Daniels, during what can be characterized as a relatively short traffic stop, were engaged in constitutionally permitted conduct within the "mission" of the stop, including conduct to ensure officer safety.

The sequence of events here shows that the duration of the stop was not unreasonable.  From the beginning of the stop, there arose escalating concern about Defendant.  Noticing there were two passengers in the car, Officer Sajdak asked Defendant and the front seat passenger, as he was allowed, if they had any identification.  Defendant stated that he did, but when asked to produce it, he said he did not have the identification on him.  After these questions, Defendant swung open his car door.  Officer Daniels told Defendant to stay inside the car.  Following the door opening incident, Officer Sajdak shined his flashlight toward Defendant.

Although he did not see anything obviously suspicious, he decided to move to the car door next to which Defendant was seated.  He did so because this was where Officer Daniels was standing and he wanted to make sure he was okay.  About this time, Officer Daniels noticed beads of sweat collecting on Defendant's forehead, he saw an artery in his neck begin to pulse, and saw that Defendant began breathing heavily and became "very fidgety."  In light of these observations, Defendant was ordered to keep his hands in his lap.  All of this happened only about ninety seconds into the stop.  Officer Sajdak then asked Defendant for his name and date of birth.  Defendant said his name was "Jeremy Waller" and he gave a birth date.  Officer Sajdak went to his patrol car and entered this information into the computer to see if there were any outstanding warrants against or other information about Defendant.

The computer search did not disclose any outstanding warrants against Jeremy Waller although, based on Officer Sajdak's training and experience, the report results did not exclude the possibility that Defendant was not honest about his identifying information.  The computer did find a "possible warrant under a different name," "Dwayne Thomas Waller."

Officer Sajdak decided to continue to try to verify the information reported from the records search and to determine whether Defendant was Jeremy Waller.

Officer Daniels opened the rear car door and ordered Defendant out of the car, telling him to place his hands on the car roof. Defendant stood up outside of the car, and immediately took flight. When Officer Sajdak saw that Defendant had fled, he interrupted his computer search to join in the pursuit. After Defendant was apprehended and put into a police car, Officer Sajdak resumed his computer search to try to verify Defendant's identity.

The Court evaluates these facts giving "[g]reat deference . . . to the judgment of trained law enforcement officers 'on the scene.'" Chanthasouxat, 342 F.3d at 1276; see also Griffin, 696 F.3d at 1360. Here, police instituted a traffic stop in a high crime area. They were entitled to investigate the traffic violation and, in doing so, to ensure their safety. It is undisputed that Officer Sajdak was permitted to require the passengers to produce identifying information and to run a background check on them including to evaluate if they presented a safety risk. Defendant first was asked if he had identification and he responded promptly he did, then, as immediately, responded that he did not have it on him. That alone produces suspicion and created concern that Defendant might have given misleading identification information when asked for it. Because of that concern, when the report came back that there was not a warrant against a person with the name Defendant had given, the search for record information was

13

continued. It was during this identity verification process that Defendant fled and the gun he had was discovered.

In short, Officers Sajdak and Daniels were, during this relatively brief traffic stop, in a continuous process of determining Defendant's identity and running background checks when the Defendant tried to evade the police by running off. The research into Defendant's identity was directly related to the traffic stop itself and courts have routinely found to be constitutional the activity in which Officers Sajdak and Daniels engaged because it was within the mission of safely investigating a traffic stop in an undisputed high crime area.[4] Put another way, Officer Sajdak's and Officer Daniel's investigative efforts in determining Defendant's identity and whether there were outstanding warrants against him were taken while effectuating the purpose of the stop and to ensure officer safety during it. See Purcell, 236 F. 3d at 1277.

    B.    Independent Reasonable Suspicion

Even if the inquiries regarding Defendant and the investigation using the computer databases were not within the purpose of the stop—which the Court finds that they were—Defendant's conduct provided reasonable suspicion

---

[4] The Court determines that a traffic stop in a high crime area may be taken into consideration in determining if there was reasonable suspicion for the stop as well as the need to ensure officer and detainee safety. That is, a safety risk is more acute in a high crime area than in other areas.

independently sufficient to warrant further investigation.  That is, Defendant's conduct supported there was articulable suspicion of illegal activity.  See Purcell, 236 F.3d at 1277.

Defendant's conduct was suspicious.  He claimed not to have identification on him after stating he had identification.  He tried to get out of the car—conduct by a passenger that was unusual.  When he was told to remain in the car, he developed beads of sweat on his forehead, his neck artery visibly pulsed, he become fidgety and then, when he was told to get out of the car and place his hands on the roof, he ran.  Deferring to Officer Sajdak's and Officer Daniel's on-scene evaluation that further investigation of Defendant's conduct, including whether he had told the truth about his identity, was necessary, the Court finds that the officers had articulable, reasonable suspicion to investigate further, including by determining Defendant's identity and whether he had any outstanding warrants. That a gun was found when Defendant took flight as the computer search process was ongoing, does not require the gun to be suppressed.  To the contrary, the gun was discovered when Defendant ran while a reasonable investigation, based on reasonable suspicion, was being conducted.[5]  See United States v. Griffin,

---

[5] It is likely the gun would have been discovered after Defendant got out of the car if he had placed his hands on the roof as instructed.

109 F.3d 706, 708 (11th Cir. 1997); United States v. Hires, 282 F. App'x 771, 773-774 (11th Cir. 2008).

Under any analysis, the discovery of the firearm was the result of a constitutionally allowed traffic stop and investigation conducted to ensure officer and car occupant safety. The duration of the stop was limited to that necessary to effectuate the purpose of the stop, or otherwise was based on articulable reasonable suspicion that arose during the scope of the traffic stop investigation. For these reasons, Defendant's Objections to the R&R are overruled.

## IV.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Objections [56] to the Magistrate Judge's Report and Recommendation are **OVERRULED**.

**IT IS FURTHER ORDERED** that Magistrate Judge Justin S. Anand's Report and Recommendation [49] is **ADOPTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress Evidence [9] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress Statements [10] is **DENIED**.

**SO ORDERED** this 28th day of January, 2015.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE